Filed 7/15/25  P. v. Torres CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE MARTIN TORRES,<br><br>    Defendant and Appellant. | G063366<br><br>(Super. Ct. No. 20NF0898)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Scott A. Steiner, Judge. Reversed and remanded.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Jose Martin Torres appeals an order denying his petition for resentencing pursuant to Penal Code section 1172.6.[1] He contends the trial court erred in finding he failed to make a prima facie showing for relief, and we agree. Because the record of conviction does not conclusively establish Torres is ineligible for resentencing, we reverse and remand for further proceedings.

PROCEDURAL BACKGROUND

In 2020, Torres and three codefendants were jointly charged with attempted murder and assault with a deadly weapon. (§§ 664/187, 245, subd. (a)(1).) The complaint alleged the attempted murder was premeditated and gang related, and that Torres vicariously discharged a firearm during that offense. (§§ 664, subd. (a), 186.22, subd. (b), 12022.53, subds. (b), (e)(1).) In addition, the complaint alleged Torres had suffered a prior serious felony conviction and a prior strike conviction. (§§ 667, subd. (a)(1), (c) & (e)(1), 1170.12, subd. (c)(1).)

The preliminary hearing began on March 11, 2021. After it became clear from the testimony that Torres was not the shooter and no one was injured during his alleged offenses, the trial court interrupted the hearing to accept a plea agreement between the parties. Pursuant to that agreement, Torres pleaded guilty to both charged offenses and admitted the prior strike allegation. In exchange, the court struck the remaining

---

[1] That section was originally housed in Penal Code section 1170.95, but it was subsequently renumbered without substantive change as Penal Code section 1172.6. (Stats. 2022, ch. 58, § 10.) We will refer to the latter section for ease of reference. All further statutory references are to the Penal Code.

allegations and sentenced Torres to 10 years in prison. As the factual basis for his plea, Torres admitted in pertinent part:

"I, along with Fernando Roman, Rosa Salgado-Ayala and Josue Salgado-Ayala did a [*sic*] attempt to kill Travon B., who is a person, and we did so with the intent to kill Travon B. This act was done with premeditation and deliberation. During the course of the attempted murder, I also aided and abetted the commission of an assault with a deadly weapon, namely a firearm, against Travon B."

On August 7, 2023, Torres petitioned for resentencing on his attempted murder conviction under section 1172.6. He argued he was entitled to relief because, pursuant to Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), section 1172.6 was amended effective January 1, 2022, to add attempted murder to the list of crimes for which resentencing is available. (Stats. 2021, ch. 551, § 2.) However, the trial court determined that amendment was merely intended to clarify the parameters of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which, as discussed more fully below, limited the scope of California's murder statutes. (Stats. 2018, ch. 1015, §§ 2–4.) Based on that understanding, the court ruled Torres was ineligible for resentencing because he was convicted of attempted murder after Senate Bill 1437 became effective on January 1, 2019. Therefore, it denied his petition without an evidentiary hearing.

## DISCUSSION

Torres contends the basis for the trial court's denial order was erroneous and, because the record does not conclusively prove he is ineligible for resentencing, he is entitled to an evidentiary hearing on his petition. The Attorney General concedes the court's reasoning was wrong, but he urges us

3

to affirm on the ground the court's decision to summarily deny Torres's petition was nonetheless correct. We find Torres's position more persuasive.

## I.

### THE STATUTORY FRAMEWORK

Torres's claim for resentencing is grounded in Senate Bill 1437, which narrowed the scope of vicarious liability for the crime of murder in California. (Stats. 2018, ch. 1015, §§ 2–4.) As relevant here, Senate Bill 1437 eliminated the natural and probable consequences theory for that offense. Under that theory, a defendant could be convicted of murder if he aided and abetted a lesser crime and murder was a foreseeable consequence of that lesser offense. (*People v. Chiu* (2014) 59 Cal.4th 155, 161.) But, by amending the murder statutes to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime" (§ 188, subd. (a)(3)), Senate Bill 1437 effectively abolished the natural and probable consequences theory as a means of proving murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 845–848.)

Senate Bill 1437 did not affect the direct theory of aiding and abetting, however. Accordingly, "[o]ne who directly aids and abets another who commits murder is . . . liable for murder under the new law just as he or she was liable under the old law." (*People v. Offley* (2020) 48 Cal.App.5th 588, 596.)

Senate Bill 1437 also led to the enactment of section 1172.6, which is the procedural mechanism for challenging a murder conviction based on vicarious liability. As originally enacted, section 1172.6 applied only to defendants who were convicted of murder, but as noted above, that changed in 2022, when Senate Bill 775 expanded the statute to include defendants who were convicted of attempted murder. To be eligible for relief

4

under section 1172.6, defendants who were convicted of attempted murder must allege they were convicted under the natural and probable consequences theory, and they could not currently be convicted of that offense in light of the changes wrought by Senate Bill 1437. (§ 1172.6, subd. (a)(1)–(3).)

If the defendant makes a prima facie showing to that effect, the trial court is required to issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d).) At the hearing, the prosecution must prove beyond a reasonable doubt the defendant is ineligible for resentencing because his conduct did in fact rise to the level of attempted murder as redefined by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) In other words, the prosecution would have to prove the defendant was an actual perpetrator of that offense, or he directly aided and abetted its commission. Otherwise, the defendant is entitled to vacatur and resentencing per the terms of section 1172.6.

In *People v. Lewis* (2021) 11 Cal.5th 952, our Supreme Court ruled the bar for establishing a prima facie case for resentencing is very low and the trial court's role in determining whether that bar has been cleared in a given case is quite limited. (*Id.* at pp. 970–972.) Although the court may consider the underlying record of conviction, judicial factfinding is not allowed. (*Ibid.*) Unless the record of conviction proves the defendant is ineligible for resentencing as a matter of law, the court must issue an order to show cause and conduct an evidentiary hearing on his entitlement to relief. (*Id.* at p. 971; accord, *People v. Strong* (2022) 13 Cal.5th 698, 708–709.)

"'When the petitioner's conviction resulted from a guilty plea rather than a trial, the record of conviction includes the facts "the defendant admitted as the factual basis for a guilty plea."'" (*People v. Ramos* (2024) 103

Cal.App.5th 460, 464–465.) We may also consider the wording of the charges and evidence presented at the preliminary hearing in determining whether a petitioner has made a prima facie showing for resentencing under section 1172.6. (*People v. Patton* (2025) 17 Cal.5th 549, 560; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329–330, abrogated on another ground by *People v. Lewis, supra*, 11 Cal.5th at pp. 961–963.)

## II.

### THE TRIAL COURT'S RULING

The trial court denied Torres's petition without an evidentiary hearing based on its belief Senate Bill 775 did not change the law on resentencing. Before that bill became effective in 2022, however, the appellate courts were divided on the question whether attempted murderers were included in Senate Bill 1437, so as to be able to seek resentencing under section 1172.6. (See *People v. Love* (Oct. 1, 2020) B302892, opn. ordered nonpub. Jan. 26, 2022 [summarizing the split of authority on that issue].) The California Supreme Court was poised to resolve that issue in *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted Nov. 13, 2019, S258175. But the Legislature rendered the issue moot through Senate Bill 775 by expressly including attempted murder as a crime for which resentencing is available under section 1172.6. (See *People v. Sanchez* (2022) 75 Cal.App.5th 191, 193–194.)

This history proves Senate Bill 775 did not merely clarify existing law, as the trial court found in this case. Rather, the bill substantively amended the law by guaranteeing attempted murderers like Torres an opportunity for resentencing. Thus, we agree with the parties that the court's reasoning for denying Torres's petition was flawed.

Nevertheless, our task as an appellate court is to review the trial court's *decision*, not its *reasoning*: We will affirm the court's order if it reached the correct result, """"regardless of the considerations [that] may have moved the trial court to its conclusion.""" (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) Therefore, irrespective of the trial court's reasoning for denying Torres's petition, we must determine whether that decision was ultimately correct.

### III.
### THE RECORD OF CONVICTION DOES NOT RENDER TORRES LEGALLY INELIGIBLE FOR RESENTENCING

As set forth above, the charges against Torres and the evidence presented at his preliminary hearing make clear he committed his offenses with three other people, and he was not the one who fired at the victim. Therefore, his liability for attempted murder was based on the theory of aiding and abetting. In the factual basis for his guilty plea, however, Torres did not specify whether he was pleading guilty to attempted murder under the direct theory of aiding and abetting, which is still a valid theory of liability, or the natural and probable consequences theory of aiding and abetting, which was abolished by Senate Bill 1437. Nevertheless, the Attorney General contends the substance of Torres's plea proves he was convicted under the former theory, which renders him ineligible for resentencing as a matter of law. We disagree.

The Supreme Court's decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) is instructive on this issue. In that case, the court ruled a finding or admission in the record of conviction that the defendant acted with the intent to kill does not foreclose resentencing under section 1172.6. (*Curiel, supra,* at pp. 460–463.) Rather, the record must establish all of the

7

elements necessary to support a conviction for murder or attempted murder under current law. (*Id.* at pp. 463–471.) This requires proof the defendant possessed the necessary intent and committed the necessary act or acts to be guilty under a presently valid theory of liability, such as direct aiding and abetting. (*Ibid.*)

In this case, Torres admitted he and his codefendants attempted to kill the victim. Because Torres pleaded guilty as an aider and abettor, this admission proves he assisted his cohorts in the killing so as to satisfy the actus reus requirement for attempted murder under the direct theory of aiding and abetting. Importantly, however, Torries did not admit he harbored the requisite intent to be liable under that theory. While admitting he and his codefendants possessed the intent to kill (i.e., malice), that alone is not enough. As *Curiel* explained, to satisfy the mens rea for direct aiding and abetting, the defendant must also act with "'"knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends."'" (*Curiel, supra,* 15 Cal.5th at p. 463.)

The Attorney General argues those knowledge and intent requirements were encompassed in Torres's guilty plea. In his view, because Torres and his codefendants "committed the attempted murder together and with the requisite mental state [meaning the intent to kill], they necessarily had knowledge of each other's unlawful purpose and the intent to facilitate that end."

In support of that claim, the Attorney General relies on this court's decision in *People v. Ramos, supra,* 103 Cal.App.5th 460. But in pleading guilty to attempted murder in that case, the defendant not only admitted he harbored the intent to kill, he also admitted he "'abetted'" that offense. (*Id.* at p. 466.) It was the defendant's admission to *abetting* the

8

attempted murder that convinced us he both knew of, and intended to facilitate, the perpetrator's unlawful purpose. (*Ibid.*)

Here, however, Torres admitted only that he intended to kill; he did not further admit that he abetted the attempted murder. While the intent to kill is certainly a blameworthy mental state, *Curiel* makes clear that mindset alone is insufficient to render a defendant ineligible for resentencing. (*Curiel, supra*, 15 Cal.5th at pp. 461–468 [although the legislative history of Senate Bill 1437 makes clear that malice is generally considered a necessary prerequisite for murder, "[i]t is only one element. It does not by itself establish any valid theory of liability"].)

The Attorney General draws our attention to two other cases in which the defendant's admission was deemed fatal to his resentencing prospects under section 1172.6, *People v. Romero* (2022) 80 Cal.App.5th 145 (*Romero*) and *People v. Saavedra* (2023) 96 Cal.App.5th 444 (*Saavedra*). The sole disqualifying factor in *Romero* was the defendant's admission he acted with the intent to kill in helping his codefendant commit murder. (*Romero, supra*, at p. 153.) But as the Supreme Court subsequently ruled in *Curiel*, malice alone is insufficient to preclude resentencing under section 1172.6. Because *Romero* predated *Curiel*'s guidance on this issue, it is not controlling here. (See generally *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [under the doctrine of stare decisis, lower appellate courts are required to follow Supreme Court authority].)

*Saavedra* also is no help to the Attorney General, because in that case the defendant admitted he personally attempted to kill the victims by discharging a firearm at their vehicle. (*Saavedra, supra,* 96 Cal.App.5th at pp. 446–447.) Because the defendant admitted he was the actual perpetrator, there was no possibility he was convicted on a now-invalid theory of vicarious

9

liability. (*Id.* at p. 448.) In fact, in *Saavedra*, there was nothing to suggest that anyone other then the defendant was even involved in carrying out the attempted murder. That is why he was deemed ineligible for resentencing as a matter of law. (*Ibid.*)

In contrast to *Saavedra*, the record in this case proves Torres was *not* the actual perpetrator of the attempted murder to which he pleaded guilty. Furthermore, the admissions in Torres's guilty plea were broad enough to encompass the natural and probable consequences theory of aiding and abetting. Because his plea does not conclusively establish he was convicted of attempted murder as a direct aider and abettor, the trial court erred in denying his petition at the prima facie stage of the proceedings. That does not ensure Torres will ultimately prevail on his petition, but it does require further proceedings on that issue.

## DISPOSITION

The trial court's postjudgment order is reversed and the matter is remanded for the issuance of an order to show cause and an evidentiary hearing pursuant to section 1172.6.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.

10